STATE OF MAINE
CUMBERLAND, ss

)
MICHAEL MAHAR, Personal )
Representative of the ESTATE OF )
MYRTLE J. MAHAR, )
)
        Plaintiff, )
)
    v. )
) **DECISION AND ORDER**
) (General Electric Co.)
SULLIVAN & MERRITT, INC., )
DEZURIK, INC., F.W. WEBB CO., )
GENERAL ELECTRIC CO., CBS CORP., )
THOMAS DICENZO, INC., GOULDS )
PUMPS, INC., WARREN PUMPS, LLC, )
JOS. A. BERTRAM, INC., )
PEARSE-BERTRAM, LLC, and )
BERTRAM CONTROLS CORP., LLC, )
)
        Defendants )
)

In this action, Plaintiff seeks to recover damages allegedly resulting from the death of Myrtle J. Mahar (the Decedent) due to her exposure to asbestos during the course of her employment at the Georgia-Pacific mill (now the Domtar mill) in Woodland, Maine (hereinafter, the "Woodland mill"). Plaintiff alleges that as a result of exposure to asbestos used with products manufactured by or removed by the Defendants, the Decedent contracted mesothelioma, which resulted in her death. The matter is before the Court on the summary judgment motion of General Electric, Co. (GE).

I.     FACTUAL BACKGROUND

The Decedent began working at the Woodland mill in April 1977, initially working as a spare in the yard crew at various locations throughout the Woodland mill. (Supp. S.M.F. ¶¶ 3-4;

Opp. S.M.F. ¶¶ 3-4.) As a spare, the Decedent cleaned up debris from alleyways, cleaned spills, and checked tank levels. (Supp. S.M.F. ¶ 4; Opp. S.M.F. ¶ 4.) The Decedent became a spare janitor in 1979 and began performing janitorial duties such as sweeping, scrubbing, stripping, and waxing floors, and cleaning offices and bathrooms; she became a permanent janitor in 1981. (Supp. S.M.F. ¶ 5; Opp. S.M.F. ¶ 5.)

GE manufactured the No. 10 turbine at the Woodland mill. (Supp. S.M.F. ¶¶ 17, 47; Opp. S.M.F. ¶¶ 17, 47; A.S.M.F. ¶ 6; Reply S.M.F. ¶ 6.) The Decedent did not directly work on the steam turbines located at the mill, other to wipe them off and sweep around them; she never assisted others who worked on the steam turbines. (Supp. S.M.F. ¶¶ 7, 23; Opp. S.M.F. ¶¶ 7, 23; Def.'s Exh. B 82:1-2.) The Decedent cleaned after work had been done on the turbine. (A.S.M.F. ¶ 10.) As a janitor, the Decedent passed by steam turbines on her way to offices and bathrooms for which she was responsible to clean. (Supp. S.M.F. ¶¶ 10, 13-14, 23, 49; Opp. S.M.F. ¶¶ 10, 13-14, 23, 49). Most of the time, a bare metal cover protected the turbines when she passed by them. (Supp. S.M.F. ¶¶ 14, 18, 33, 47; Def.'s Exh. E 136:21-22; Opp. S.M.F. ¶¶ 18, 33, 47.) When the turbines were undergoing maintenance, the cover was off and the Decedent walked past them. (Opp. S.M.F. ¶ 14; A.S.M.F. ¶¶ 10-12; Reply S.M.F. ¶¶ 10-12.)

The Decedent and Mary Austin, a co-worker, passed by the No. 9 and No. 10 turbines when they were torn apart and when there were asbestos gaskets and blankets around; the Decedent and Austin cleaned up this debris. (A.S.M.F. ¶¶ 12, 14.)[1] In 1991, asbestos was removed from the steam line, caustic soda line, and a fuel oil supply line of the No. 10 turbine pursuant to an asbestos removal work plan. (A.S.M.F. ¶ 8.)[2] GE generally disputes whether

---

[1] GE qualifies these statements to note that there is no indication that the asbestos materials came from the GE turbine. (Reply S.M.F. ¶¶ 12, 14.)

[2] GE qualifies this statement: "The work outlined in Exhibit 10 involved piping connected to the GE steam turbine—known as the No. 10 turbine—and not work on the turbine itself." (Reply S.M.F. ¶ 8.) From the face of

2

there is sufficient, relevant evidence to show that the GE turbine, as opposed to the piping connected to the turbine, was insulated with asbestos and whether those asbestos materials originated with GE. (Reply S.M.F. ¶¶ 1-5, 8-9.)

## II. PROCEDURAL BACKGROUND

Myrtle J. Mahar filed suit in Washington County Superior Court. The amended complaint asserts eight causes of action. The only counts relevant to the present motion are: negligent failure to warn (Count I); strict liability failure to warn, *see* 14 M.R.S. § 221 (2011), (Count II); and punitive damages (Count IV), which Plaintiff asserted against all named Defendants.

In Counts I and II, Plaintiff relies on the Defendants' sale of asbestos containing equipment to the Woodland mill without adequate warning of the dangers of asbestos. Count IV seeks punitive damages for the Defendants' willful and malicious actions that were "in total disregard of the health and safety of the users and consumers of their products." (Compl. ¶ 40.) The Decedent passed away on October 1, 2009. (*See* Sugg. of Death, filed Mar. 29, 2010.) The present Plaintiff was substituted for the Decedent on July 11, 2011.

## III. DISCUSSION

### A. Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense

the exhibit, the Court cannot determine whether the piping is part of the turbine, and GE has cited to no other record material for that assertion.

that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

## B. Applicable Substantive Law

Plaintiff's primary causes of action against GE are negligence and strict liability. Plaintiff alleges that GE manufactured asbestos containing products, that the Decedent was exposed to asbestos from those products in her work at the Woodland mill, and that the Decedent's exposure to asbestos from GE's products was a substantial factor in bringing about her death from mesothelioma.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)],

4

imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the RESTATEMENT (SECOND) OF TORTS.[3] In *Lohrmann*, the court announced and applied the frequency, regularity, and proximity test, which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail. *See id.* at 1163-64.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[4] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's

---

[3] The RESTATEMENT (SECOND) OF TORTS is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . ." RESTATEMENT (SECOND) OF TORTS § 431(a).

[4] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. LINSC-CV-2004-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J).[5] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* (quoting 63 AM. JUR. 2D *Products Liability* § 70 (2001) (emphasis added)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product

---

[5] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiff must demonstrate that: (1) GE's product was at the Woodland mill, (2) GE's product at the Woodland mill contained asbestos, and (3) the Decedent had personal contact with asbestos from GE's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

C.    Analysis

GE argues that Plaintiff cannot establish a connection between the Decedent and asbestos-containing GE products. In other words, GE argues that Plaintiff has failed to prove product nexus. Product nexus requires proof "that the defendant's asbestos-containing product was at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used . . . ." *Boyden*, 2007 Me. Super. LEXIS 47, at *11 (quotation marks omitted).

GE first argues that there is no evidence that the GE turbine was insulated with asbestos-containing insulation when the Decedent began working at the Woodland Mill. GE relies on the testimony of Al Goodwin, but he does not establish that the mill was asbestos-free despite the

7

fact that the insulation mill employees used after 1969 did not contain asbestos.[6] Given that he also testified that from 1969 until 1980 contractors removed asbestos at the mill (supp. S.M.F. ¶ 43; Opp. S.M.F. ¶ 43.), his testimony does not prove that the mill was free from asbestos when the Decedent began working at the mill. Indeed, the disposal and removal of a storeroom full of asbestos does not establish that the mill itself was asbestos free. (Supp S.M.F. ¶ 44; Opp. S.M.F. ¶ 44.) The suggestion that the mill contained no asbestos after 1969 is also contradicted by the testimony of Mary Austin and the Decedent.

Next, GE argues that the Decedent's exposure, if any, to asbestos by was not related to the GE turbine. Plaintiff points to the Decedent's testimony, the testimony of Mary Austin, materials prepared by GE in 1958,[7] and an asbestos removal project on the No. 10 turbine to show that GE's turbine contained asbestos to support this contention. (Opp. S.M.F. ¶¶ 13-14; A.S.M.F. ¶¶ 1-3, 8, 10-14.) Simply stated, review of the record evidence upon which Plaintiff relies reveals a disputed issue of material fact for trial as to whether the Decedent was exposed to asbestos from the GE turbine. Accordingly, summary judgment is not warranted.

III. CONCLUSION

Based on the foregoing analysis, the Court denies General Electric Co.'s motion for summary judgment.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 7/26/12

John C. Nivison
Justice, Maine Business & Consumer Court

---

[6] Greg Reardon, however, testifies that new asbestos material was not banned until 1973. (Supp. S.M.F. ¶ 30; Opp. S.M.F. ¶ 30.)
[7] As GE points out, however, the 1958 materials were published 20 years in advance of the Decedent's employment at the Woodland mill and Plaintiff has not shown that the turbines referred to in those materials were present at the Woodland mill.

8

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-21

MICHAEL MAHAR, Personal
Representative of the ESTATE OF
MYRTLE J. MAHAR,

          Plaintiff,

    v.

SULLIVAN & MERRITT, INC.,
DEZURIK, INC., F.W. WEBB CO.,
GENERAL ELECTRIC CO., CBS CORP.,
THOMAS DICENZO, INC., GOULDS
PUMPS, INC., WARREN PUMPS, LLC,
JOS. A. BERTRAM, INC.,
PEARSE-BERTRAM, LLC, and
BERTRAM CONTROLS CORP., LLC,

          Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**
(Thomas DiCenzo, Inc.)

Defendant Thomas DiCenzo, Inc. (TDI) moves for summary judgment on four counts of Plaintiff's Amended Complaint: negligence (Count I), strict liability (Count II), negligence (Count III), and punitive damages (Count IV). TDI asserts that because it did not receive reasonable notice of two depositions in this case (the depositions of the Decedent, Myrtle J. Mahar, and Sandra Mains), Plaintiff should not be permitted to rely upon the deposition testimony in its opposition to TDI's motion for summary judgment. Absent testimony from these two witnesses, TDI asserts that it is entitled to summary judgment.

I.    PROCEDURAL BACKGROUND

Myrtle J. Mahar filed suit in Washington County Superior Court. TDI was served on November 25, 2008, through Curtis Kimball, TDI's corporate clerk and attorney at Rudman

Winchell. (Supp. S.M.F. ¶ 1; Opp. S.M.F. ¶ 1.) In the complaint, Plaintiff asserts four causes of action against TDI: negligent failure to warn (Count I), strict liability failure to warn, *see* 14 M.R.S. § 221 (2011), (Count II), negligence (Count III), and punitive damages (Count IV).[1] In Counts I and II, Plaintiff relies on the Defendants' sale of asbestos containing equipment to the Woodland mill without adequate warning of the dangers of asbestos.[2] In Count III, Plaintiff alleges that TDI failed to take sufficient precautions in its work at the Woodland mill to protect the Decedent from asbestos dust and particles. In Count IV, Plaintiff seeks punitive damages allegedly resulting from the Defendants' willful and malicious actions that were "in total disregard of the health and safety of the users and consumers of their products." (Compl. ¶ 40.)

On Friday, December 5, 2008, Defendant Joy Technologies, Inc. (Joy) noticed to all counsel of record the deposition of the Decedent. (Depo. Notice filed Dec. 8, 2008.) Attorneys for the Decedent forwarded the notice via e-mail to John McCarthy, attorney at Rudman Winchell, on December 5, 2008. (Supp. S.M.F. ¶¶ 2-3; Opp. S.M.F. ¶¶ 2-3.) The signed deposition notice stated that Joy would take the deposition on Tuesday, December 9, 2008 at 1:00 p.m. at the Baileyville Town Office in Baileyville, Maine. (Supp. S.M.F. ¶ 4; Opp. S.M.F. ¶ 4.)

Also on December 5, 2008, Plaintiff's counsel forwarded by e-mail to Rudman Winchell an unsigned notice of a video deposition to occur on Thursday, December 11, 2008, at 9:00 a.m. in Pembroke, Maine. (Supp. S.M.F. ¶ 5; Opp. S.M.F. ¶ 5.) Plaintiff's counsel attached to the e-

---

[1] Count III is the only count that is asserted solely against TDI; the remaining counts are asserted against all Defendants. TDI suggests in its memorandum of law that the only count asserted against it is Count III. (Def.'s Memo 2 n.1.) The Amended Complaint, however, lists TDI as a Defendant against whom Counts I, II, and IV are asserted. (Amend. Compl. ¶ 17, 33-34, 36, 40.)

[2] It is not clear from the record whether TDI was "engaged in the business of mining, and/or milling, and/or manufacturing, and/or fabricating, and/or supplying, and/or selling asbestos-containing products to which Plaintiff was exposed" (Amend. Compl. ¶ 28), but the complaint also alleges in support of Counts I and II that Defendants are liable because they "used, and/or specified, and/or removed products containing asbestos" (Amend. Compl. ¶ 33.)

2

mail notice a series of documents: Plaintiff's Complaint, medical records, income tax returns, W-2 statements, and answers to Standard Interrogatories. (Supp. S.M.F. ¶ 5; Opp. S.M.F. ¶ 5; A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.) By letter to Plaintiff's counsel on December 8, 2008, Attorney McCarthy objected to the December 9, 2008, deposition citing M.R. Civ. P. 30(a) and (b). (Supp. S.M.F. ¶ 6; Opp. S.M.F. ¶ 6.)

The Decedent's deposition in fact occurred on December 10 and 11, 2008, in Baileyville Maine; TDI was not represented at the deposition. (Supp. S.M.F. ¶¶ 7, 9; Opp. S.M.F. ¶¶ 7, 9.) Sandra Mains, one of the Decedent's co-workers, was deposed on December 10, 2008, in Baileyville; TDI did not receive notice of the Mains deposition and was not represented at the Mains deposition. (Supp. S.M.F. ¶¶ 7-9; Opp. S.M.F. ¶¶ 7-9.)[3]

TDI filed its answer and cross-claim on January 16, 2009. (*See* Supp. S.M.F. ¶¶ 10-11; Opp. S.M.F. ¶¶ 10-11 (indicating TDI sought and received an unopposed extension of time to answer Plaintiff's complaint). The Decedent passed away on October 1, 2009. (*See* Sugg. of Death filed Mar. 29, 2010.) The Estate of Myrtle J. Mahar was substituted for the Decedent on July 11, 2011.

## II.     FACTUAL BACKGROUND

In February of 1979, TDI contracted to perform work for Georgia-Pacific: the No. 9 Boiler demolition. (A.S.M.F. ¶ 5.) In August of 1980, TDI contracted to demolish a strong liquor storage tank, including "all associated piping, insulation, and cladding." (A.S.M.F. ¶ 6.) In March of 1981, TDI contracted to demolish a building and tank. (A.S.M.F. ¶ 8.) In

---

[3] Plaintiff denies that TDI did not receive notice of the Mains deposition, asserting that the deposition notice was served on TDI via e-mail attachment on December 5, 2008. (Opp. S.M.F. ¶ 8.) The cited exhibit, however, does not support that assertion. Plaintiff's Exhibit 1 consists of copies of the e-mail transmittals, but the electronically attached documents are not included in the exhibit and the file names do not reflect that the Mains deposition notice was included. (*See* Pl.'s Exh. 1.) Plaintiff has failed to contradict Attorney McCarthy's sworn testimony and the statement is deemed admitted. *See* M.R. Civ. P. 56(h)(4).

3

September of 1982, TDI contracted to remove black liquor and demolish old insulation and cladding. (A.S.M.F. ¶ 7.) TDI objects to the preceding four statements on the grounds that the supporting documents are not authenticated properly and hearsay without an exception, but does not otherwise admit, deny, or qualify each statement.[4] (Reply S.M.F. ¶¶ 5-8; *see* A.S.M.F. ¶ 4, Reply S.M.F. ¶ 4 (constituting the allegedly defective authentication).)

Nevertheless, TDI admits that it performed demolition work at the Georgia-Pacific plant for twenty years (A.S.M.F. ¶ 12; Reply S.M.F. ¶ 12)[5], and eyewitnesses confirm that TDI performed demolition work at the plant (A.S.M.F. ¶¶ 13-19; Reply S.M.F. ¶¶ 13-19)[6]. TDI, along with several other contractors, tore down the Number 8 Boiler, which work included removing asbestos insulation. (A.S.M.F. ¶ 14; Reply S.M.F. ¶ 14.)[7] The Decedent worked in the area when TDI and other contractors demolished the Number 8 boiler. (A.S.M.F. ¶ 15; Reply S.M.F. ¶ 15.) In the late 1970s and early 1980s, TDI removed pipe insulation while working in the bleach plant, and the Decedent cleaned up that pipe covering from an alleyway. (A.S.M.F. ¶ 18; Reply S.M.F. ¶ 18.) When TDI performed work at the Woodland mill, it did not cordon off its areas. (A.S.M.F. ¶ 19; Reply S.M.F. ¶ 19.) At her deposition, the Decedent testified to having cleaned up debris thrown out of the windows into an alleyway on a regular basis. (A.S.M.F. ¶ 10.)[8]

---

[4] Because use of these documents is not necessary to establish that TDI actually performed demolition work at the Woodland mill, these authentication issues are not discussed any further.

[5] Technically, TDI only admitted that "Edward Leavitt *testified* that he recalled DiCenzo doing demolition work at Georgia-Pacific for twenty years," (A.S.M.F. ¶ 12), not that TDI did in fact perform demolition work at Georgia-Pacific for 20 years.

[6] TDI objects to these statements of material facts on various grounds, but does not deny that TDI did perform work at the plant.

[7] TDI asserts that the cited testimony of Gregory Reardon is speculative and not based on personal knowledge because elsewhere in the deposition, Mr. Reardon states that he has no "specific recollections of Thomas DiCenzo working with asbestos." (Reply S.M.F. ¶ 14; Pl.'s Exh. 12 41:9-11.) TDI's objection goes to the weight of the evidence, not the admissibility; the statement of material fact is supported by a record citation.

[8] Counsel for Defendant WLB Holding, Inc., a distributor of piping and asbestos pipe covering, cross-examined the Decedent at the deposition. (A.S.M.F. ¶ 11.) TDI objects to the preceding statements because they cite the

4

III. DISCUSSION

A. Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18. A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745.

B. Applicable Substantive Law

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm."[9] *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in

---

Decedent's deposition and TDI was not represented at that deposition. *See* M.R. Civ. P. 32. (Reply S.M.F. ¶¶ 10-11.)

[9] In the Complaint, Plaintiff alleges that TDI failed to warn the Decedent of the dangers of asbestos, asserting causes of action both in negligence and strict liability. The summary judgment record, however, contains no allegations that TDI supplied or marketed any product that harmed the Decedent; rather, the record indicates that it was TDI's alleged removal of asbestos insulation that injured the Decedent. Because the Court is denying TDI's motion for summary judgment and the negligence claim, the Court will allow the other causes of action to remain.

5

bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted). Plaintiff does not in fact identify the duty owed by TDI, but one can be inferred from the complaint: TDI, by undertaking the removal of hazardous materials at the mill, had a duty to protect employees at the Woodland mill from exposure to asbestos dust and particles. TDI breached this duty by failing to take reasonable precautions to prevent the disturbance of asbestos in the course of their work. In order to survive the motion for summary judgment Plaintiff must show that the Decedent was exposed to asbestos from TDI's negligent handling of the substance. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's [conduct] was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at \*8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

C.   Analysis

The parties raise a series of arguments surrounding the Decedent's deposition and whether it can be used against TDI because TDI did not receive adequate notice of the deposition and was not represented at the deposition.[10] *See* M.R. Civ. P. 12(a); M.R. Civ. P. 30(a), (b)(1); M.R. Civ. P. 32(a), (d)(1); M. R. Evid. 804(b)(1). The Court does not address these arguments any further because the statements of material fact supported by unchallenged, admissible evidence are sufficient to make out a prime facie case of negligence. Whether and to what extent the Decedent's deposition may be used in the future course of these proceedings will be determined as necessary.

---

[10] Plaintiff takes no position on the deposition of Sandra Mains and has not relied upon it in the summary judgment record. (Pl.'s Opp's MSJ 3.)

6

In response to TDI's motion for summary judgment, Plaintiff cites the testimony of Greg Reardon and Mary Austin. Mr. Reardon testified that TDI, along with several other contractors, tore down the Number 8 Boiler, which work included removing asbestos insulation. (A.S.M.F. ¶ 14; Reply S.M.F. ¶ 14.)[11] He also testified that the Decedent worked in the area when TDI and other contractors demolished the Number 8 boiler. (A.S.M.F. ¶ 15; Reply S.M.F. ¶ 15.) Further, Ms. Austin testified that when TDI did work at the Woodland mill, it did not cordon off its areas. (A.S.M.F. ¶ 19; Reply S.M.F. ¶ 19.) Through this evidence, Plaintiff has made out a prima facie case in negligence. TDI is not, therefore, entitled to summary judgment.

III. CONCLUSION

Based on the foregoing analysis, the Court denies TDI's motion for summary judgment.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 7/26/12

John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 7·31·12
Copies sent via Mail __ Electronically ✓

---

[11] As previously noted, TDI asserts that the cited testimony of Gregory Reardon is speculative and not based on personal knowledge because elsewhere in the deposition, Mr. Reardon states that he has no "specific recollections of Thomas DiCenzo working with asbestos." (Reply S.M.F. ¶ 14; Pl.'s Exh. 12 41:9-11.) TDI's objection goes to the weight of the evidence, not the admissibility; the factfinder can evaluate the credibility of Mr. Reardon at trial.

7

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT    ✓
Location: Portland
Docket No.: BCD-CV-10-21

MICHAEL MAHAR, Personal
Representative of the ESTATE OF
MYRTLE J. MAHAR,

          Plaintiff,

    v.

SULLIVAN & MERRITT, INC.,
DEZURIK, INC., F.W. WEBB CO.,
GENERAL ELECTRIC CO., CBS CORP.,
THOMAS DICENZO, INC., GOULDS
PUMPS, INC., WARREN PUMPS, LLC,
JOS. A. BERTRAM, INC.,
PEARSE-BERTRAM, LLC, and
BERTRAM CONTROLS CORP., LLC,

          Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**
(CBS Corp. as successor to
Westinghouse Electric Corp.)

In this action, Plaintiff seeks to recover damages allegedly resulting from the death of

Myrtle J. Mahar (the Decedent) due to her exposure to asbestos during the course of her

employment at the Georgia-Pacific mill in Woodland, Maine, (now the Domtar mill, but

hereinafter referred to as the "Woodland mill"). Plaintiff alleges that as a result of exposure to

asbestos used with products manufactured by or removed by the Defendants, the Decedent

contracted mesothelioma, which resulted in her death. Before the Court is the summary

judgment motion of Defendant CBS Corp., as successor to Westinghouse Electric Corporation.

(CBS).[1]

---

[1] CBS is a Delaware corporation, formerly known as Viacom, Inc., successor by merger to CBS Corporation, a
Pennsylvania entity, which was formerly known as Westinghouse Electric Corporation.

## I. FACTUAL BACKGROUND

The Decedent worked at the Woodland mill from April 1977 until July 2008 as a laborer, spare, and janitor. (Supp. S.M.F. ¶ 1; Opp. S.M.F. ¶ 1.) As a spare, the Decedent's work included cleaning and painting motors, checking tanks, and cleaning spills. (Supp. S.M.F. ¶ 2; Opp. S.M.F. ¶ 2.) As a janitor, the Decedent swept and scrubbed, stripped and waxed floors, washed walls, and otherwise cleaned office and bathrooms at the Woodland mill. (Supp. S.M.F. ¶ 3; Opp. S.M.F. ¶ 3.)

The Decedent did not work on motors or take apart motors; she painted them but was otherwise not allowed to touch the motors. (Supp. S.M.F. ¶¶ 7-9, 17; Opp. S.M.F. ¶¶ 7-9, 17.) The Decedent recalled seeing Westinghouse on a pallet or on the tag on a motor, but did not testify that she worked with any Westinghouse product. (Supp. S.M.F. ¶¶ 5-6; Opp. S.M.F. ¶¶ 5-6.)

It is undisputed that Westinghouse products, including motors, pumps, turbines, and control systems, were present at the Woodland mill. (Supp. S.M.F. ¶¶ 13-14, 16, 19, 21; Opp. S.M.F. ¶¶ 13-14, 16, 19, 21; A.S.M.F. ¶¶ 2, 6-7; Reply S.M.F. ¶¶ 2, 6-7.) The Woodland mill purchased at least 44 motors of various sizes from Westinghouse between February 1979 and August 1984. (A.S.M.F. ¶ 2; Reply S.M.F. ¶ 2.)[2] Nine of these motors were MAC motors, which were manufactured for mill and chemical plants and utilized Class "F" insulation. (A.S.M.F. ¶¶ 5-6; Reply S.M.F. ¶¶ 5-6.)[3] Asbestos is among the alternative electrical insulations found within Class "F" insulation. (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4.)[4]

---

[2] CBS admits this statement "for the purposes of this motion only." (Reply S.M.F. ¶ 2.)

[3] CBS admits this statement "for the purposes of this motion only." (Reply S.M.F. ¶¶ 5-6.)

[4] CBS denies that all Class F insulation contained asbestos or that Westinghouse required the use of asbestos insulation with its equipment. (Reply S.M.F. ¶ 4.)

2

Valves and pumps were torn apart and repaired in the machine shop. (A.S.M.F. ¶ 10; Reply S.M.F. ¶ 10.) The Decedent walked through or passed by the machine shop while the motors were being worked on; the Decedent walked through or passed by the machine shop many times each day in order to get to other parts of the mill. (A.S.M.F. ¶ 9; Reply S.M.F. ¶ 9.)[5] Nevertheless, the parties dispute whether the Decedent had personal contact with a Westinghouse product (Supp. S.M.F. ¶¶ 5, 24; Opp. S.M.F. ¶¶ 5, 24), and whether and to what extent that the Westinghouse equipment at the Woodland mill contained asbestos (Supp. S.M.F. ¶ 23; Opp. S.M.F. ¶ 23; A.S.M.F. ¶ 3; Reply S.M.F. ¶ 3).

## II. PROCEDURAL BACKGROUND

Myrtle J. Mahar filed suit in Washington County Superior Court. The amended complaint asserts eight causes of action. The principal counts relevant to the present motion are: negligent failure to warn (Count I); strict liability failure to warn, *see* 14 M.R.S. § 221 (2011), (Count II); and punitive damages (Count IV), which were asserted against all named Defendants.

In Counts I and II, Plaintiffs rely on the Defendants' sale of asbestos containing equipment to the Woodland mill without adequate warning of the dangers of asbestos. In Count IV, Plaintiff seeks punitive damages for the Defendants' willful and malicious actions that were "in total disregard of the health and safety of the users and consumers of their products." (Compl. ¶ 40.) The Decedent passed away on October 1, 2009. (*See* Sugg. of Death, filed Mar. 29, 2010.) The present Plaintiff was substituted for the Decedent on July 11, 2011.

---

[5] In support of this statement of material fact, Plaintiff cites the testimony of Mary Austin, a co-worker of the Decedent. CBS objects that the cited testimony does not identify the Decedent as the person with whom Ms. Austin would pass by the machine shop. (Reply S.M.F. ¶ 9.) Taking the evidence in the light most favorable to the Plaintiff, *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63, the reasonable inference from Ms. Austin's testimony of "we" in a deposition related to a suit brought by Ms. Mahar is that Ms. Austin is referring to Ms. Mahar.

3

III. DISCUSSION

A. Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." *See also Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. A party wishing to avoid summary judgment must present a prima facie case for each element of the claim or defense that is asserted against it. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. "If material facts are disputed, the dispute must be resolved through fact-finding." *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 18, 917 A.2d 123 (quotation marks omitted).

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B. Applicable Substantive Law

Plaintiff's primary causes of action against CBS are negligence and strict liability. Plaintiff alleges that CBS manufactured asbestos containing products, that the Decedent was

4

exposed to asbestos from those products in her work at the Woodland mill, and that the Decedent's exposure to asbestos from CBS's products was a substantial factor in bringing about her death from mesothelioma.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the RESTATEMENT (SECOND) OF TORTS.[6] In *Lohrmann*, the court announced and applied the frequency, regularity, and proximity test, which requires a plaintiff to "prove more than a casual or minimum contact

---

[6] The RESTATEMENT (SECOND) OF TORTS is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . ." RESTATEMENT (SECOND) OF TORTS § 431(a).

5

with the product" that contains asbestos. 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail. *See id.* at 1163-64.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[7] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. LINSC-CV-2004-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J).[8] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* (quoting 63 AM. JUR. 2D *Products Liability* § 70 (2001) (emphasis added)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only

---

[7] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

[8] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the fact finder.

Thus, to survive the motion for summary judgment given the record presented by CBS, the Plaintiffs must first demonstrate that: (1) CBS's product was at the Woodland mill, (2) CBS's product at the Woodland mill contained asbestos, and (3) the Decedent had personal contact with asbestos from CBS's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me.

7

Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

C.    Analysis

CBS argues that Plaintiff cannot establish a connection between the Decedent and asbestos from Westinghouse equipment, or has failed to prove product nexus.[9] Plaintiff attempts to connect the Decedent with Westinghouse products through a series of material facts: there were numerous Westinghouse products and motors throughout the mill; motors and pumps were repaired in the machine shop; and the Decedent passed through the machine shop on a daily basis. Viewed this evidence in the light most favorable to the Plaintiff, the Plaintiff has raised an issue of material fact as to the Decedent's contact with Westinghouse products. *See Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d 63.

Significantly, however, Plaintiff has established that the Decedent had any contact *with asbestos* from Westinghouse products. Specifically, Plaintiff has not established that any of the Westinghouse products with which the Decedent might have had contact at the Woodland mill contained asbestos. Although the "F" insulation included asbestos as an alternative among other insulations within that class, there is no evidence that MAC motors at the Woodland Mill contained asbestos. Plaintiff thus has not made out a prime facie case to establish negligence or strict liability. *See Reliance Nat'l Indem.*, 2005 ME 29, ¶ 9, 868 A.2d 220. Accordingly, CBS is entitled to summary judgment.

---

[9] In its reply, CBS also asserts that Plaintiff has failed to establish medical causation in his opposition to the motion and thus CBS is entitled to summary judgment. Because, however, CBS did not move for summary judgment on the issue of medical causation, that issue is not squarely before the Court. Plaintiff was not required to address that issue in its opposition.

8

III.   CONCLUSION

Based on the foregoing analysis, the Court grants CBS Corp.'s motion for summary judgment and enters judgment in favor of CBS Corp. on all counts of Plaintiff's complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date:  7/26/12

John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 7-31-12
Copies sent via Mail ___ Electronically ✓

9

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-21

MICHAEL MAHAR, Personal
Representative of the ESTATE OF
MYRTLE J. MAHAR,

          Plaintiff,

     v.

SULLIVAN & MERRITT, INC.,
DEZURIK, INC., F.W. WEBB CO.,
GENERAL ELECTRIC CO., CBS CORP.,
THOMAS DICENZO, INC., GOULDS
PUMPS, INC., WARREN PUMPS, LLC,
JOS. A. BERTRAM, INC.,
PEARSE-BERTRAM, LLC, and
BERTRAM CONTROLS CORP., LLC,

          Defendants

**DECISION AND ORDER**
(Goulds Pumps, Inc.)

In this action, Plaintiff seeks to recover damages allegedly resulting from the death of Myrtle J. Mahar (the Decedent) due to her exposure to asbestos during the course of her employment at the Georgia-Pacific mill (now the Domtar mill) in Woodland, Maine (hereinafter, the "Woodland mill"). Plaintiff alleges that as a result of exposure to asbestos used with products manufactured by or removed by the Defendants, the Decedent contracted mesothelioma, which resulted in her death. Before the Court is the summary judgment motion of Defendant Goulds Pumps, Inc. (Goulds).

I.    FACTUAL BACKGROUND

The Decedent worked at the Woodland mill from April 1977 until July 2008 as a laborer, spare laborer, and janitor. (Supp. S.M.F. ¶ 1; Opp. S.M.F. ¶ 1.) As a janitor, the Decedent

cleaned bathrooms, offices, and hallways, and on the yard crew she cleared debris. (Supp. S.M.F. ¶¶ 12, 18; Opp. S.M.F. ¶¶ 12, 18.)[1] As a spare, the Decedent both cleaned and painted the exterior of pumps. (Supp. S.M.F. ¶¶ 7-8; Opp. S.M.F. ¶¶ 7-8.)[2] As a janitor, the Decedent was responsible for cleaning offices and a bathroom, among others places, at the Woodland Mill. (Supp. S.M.F. ¶¶ 15, 18; Opp. S.M.F. ¶¶ 15, 18.) The Decedent also cleaned in areas where pumps and valves were present, and cleaned in areas after work had been done on pumps and valves. (Supp. S.M.F. ¶ 19; Opp. S.M.F. ¶¶ 7, 19; A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.)[3] The Decedent did not clean pumps in her work as a janitor,[4] and throughout her time at the Woodland mill, the Decedent never repacked pumps, tore apart pumps, or disassembled a pump.[5] (Supp. S.M.F. ¶¶ 8-9, 13; Opp. S.M.F. ¶¶ 8-9, 13.)

The Decedent and co-workers of the Decedent recall the presence of Goulds pumps at the Woodland Mill. (A.S.M.F. ¶¶ 2, 6, 10; Reply S.M.F. ¶¶ 2, 6, 10; Supp. S.M.F. ¶¶ 24, 25; Opp. S.M.F. ¶¶ 24, 25.) A co-worker of the Decedent, Brian Canane, testified that Goulds pumps at the Woodland mill contained asbestos packing and gaskets. (Opp. S.M.F. ¶ 29; Goulds Exh. K 23:5-22; A.S.M.F. ¶¶ 9, 11; Reply S.M.F. ¶¶ 9.)[6] He also recalled seeing the Decedent cleaning

---

[1] Plaintiff's denial of paragraph 12 is really more in the form of a qualification. Presumably the denial relates to the phrase "only," which is supported by the cited testimony; Plaintiff makes the point that the Decedent cleared debris as part of the yard crew. (*See* Opp. S.M.F. ¶ 12.)

[2] Goulds states that "Myrtle Mahar never worked on pumps except for painting them." (Supp. S.M.F. ¶ 7.) At the cited deposition testimony, however, the Decedent testified that she did not work on pumps except to *clean or paint* them. (Goulds Exh. D 59:6-7.)

[3] Paragraph 7 of Goulds's supporting statement of material facts is not fully supported by the record citation, but paragraph 7 of Plaintiff's opposing statement of material facts is fully supported by the record citation.

[4] This statement of material fact is somewhat misleading. The cited testimony does indicate that she did not clean pumps as a *janitor*, but the immediately preceding testimony indicates that as a spare, the Decedent cleaned pumps as a precursor to painting them. (Goulds Exh. D 59:8-14.) Cleaning pumps included washing the outside of the pump and brushing off any debris or loose paint. (Goulds Exh. D 59:8-12.)

[5] There is some inconsistency in the statements of material facts as to whether the Decedent worked "directly" on equipment. Plaintiff admits that the Decedent did not work directly on pumps or equipment (Supp. S.M.F. ¶¶ 13, 19; Opp. S.M.F. ¶¶ 13, 19), but the parties agree that the Decedent did paint pumps, (Supp. S.M.F. ¶ 7; Opp. S.M.F. ¶ 7), and the record supports that she cleaned them as well (Goulds Exh. D 59:6-7).

[6] Goulds objects that Canane's testimony is only his opinion and that he has not been designated as an expert witness, but the Court disagrees. Canane was a union pipefitter at the Woodland mill and can testify to his

2

in areas where Goulds pumps were torn apart and being serviced, but does not remember Ms. Mahar working on a Goulds pump. (Opp. S.M.F. ¶ 29; A.S.M.F. ¶ 11; Reply S.M.F. ¶ 11; Goulds Exh. K 81:19-84:16.) Goulds shipped pumps with asbestos packing and gaskets until 1984.[7] (A.S.M.F. ¶ 18; Reply S.M.F. ¶ 18.)

The parties dispute whether the Plaintiff presented sufficient admissible evidence regarding the use of asbestos in Goulds pumps. (A.S.M.F. ¶¶ 12-21; Reply S.M.F. ¶¶ 12-21.)

## II.    PROCEDURAL BACKGROUND

Myrtle J. Mahar filed suit in Washington County Superior Court. The amended complaint asserts eight causes of action. The principal counts relevant to the present motion are: negligent failure to warn (Count I); strict liability failure to warn, *see* 14 M.R.S. § 221 (2011), (Count II); and punitive damages (Count IV), which were asserted against all named Defendants.

In Counts I and II, Plaintiff relies on the Defendants' sale of asbestos containing equipment to the Woodland mill without adequate warning of the dangers of asbestos. In Count IV, Plaintiff seeks punitive damages for the Defendants' willful and malicious actions that were "in total disregard of the health and safety of the users and consumers of their products." (Compl. ¶ 40.) The Decedent passed away on October 1, 2009. (*See* Sugg. of Death, filed Mar. 29, 2010.) The present Plaintiff was substituted for the Decedent on July 11, 2011.

## III.    DISCUSSION

### A.    Standard of Review

---

ownobservations without expert witness designation. (A.S.M.F. ¶ 8; Reply S.M.F. ¶ 8.) Goulds also points out that the "testimony does not establish that the pumps and valves identified by the witness contained asbestos gaskets at the time of their delivery to the mill." (Opp. S.M.F. ¶ 9.)

[7] The Plaintiff's citation indicates the supporting evidence is on page 10 of the cited deposition, but in fact the cited testimony is on page 18. Goulds denies the statement as unsupported by the record citation, but also states: "It is assumed that there is a typographical error in the record citation." (Reply S.M.F. ¶ 18.) Goulds does not otherwise admit, deny, or qualify the statement of material fact. The cited deposition is of Barry Bradshaw, a corporate representative of Goulds, who was deposed in 1991. (A.S.M.F. ¶ 16; Reply S.M.F. ¶ 16.) The typographical error is likely the result of the poor quality of the copy of the deposition. In any event, the exhibit only includes portions of the deposition that were quoted and the page with the testimony is easily identifiable by the Plaintiff's highlighting.

3

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." *See also Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. A party wishing to avoid summary judgment must present a prima facie case for each element of the claim or defense that is asserted against it. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. "If material facts are disputed, the dispute must be resolved through fact-finding." *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 18, 917 A.2d 123 (quotation marks omitted). A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745.

B.      Applicable Substantive Law

Plaintiff's primary causes of action against Goulds are negligence and strict liability. Plaintiff alleges that Goulds manufactured asbestos containing products, that the Decedent was exposed to asbestos from those products in her work at the Woodland mill, and that the Decedent's exposure to asbestos from Goulds's products was a substantial factor in bringing about her death from mesothelioma.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations

4

omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the RESTATEMENT (SECOND) OF TORTS.[8] In *Lohrmann*, the court announced and applied the frequency, regularity, and proximity test, which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail. *See id.* at 1163-64.

---

[8] The RESTATEMENT (SECOND) OF TORTS is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . ." RESTATEMENT (SECOND) OF TORTS § 431(a).

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[9] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. LINSC-CV-2004-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[10] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* (quoting 63 AM. JUR. 2D *Products Liability* § 70 (2001) (emphasis added)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative

---

[9] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.
[10] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

6

assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiffs must demonstrate that: (1) Goulds's product was at the Woodland mill, (2) Goulds's product at the Woodland mill contained asbestos, and (3) the Decedent had personal contact with asbestos from Goulds's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

C.   Analysis

1.   Evidentiary Issues

Goulds asserts that the documentary evidence relied upon by the Plaintiff is hearsay and cannot meet the admissibility requirements of M.R. Civ. P. 56(e). *See* M.R. Evid. 803(6),

7

804(b)(1); *Beneficial Me., Inc. v. Carter*, 2011 ME 77, ¶¶ 13-14, 25 A.3d 96. (Goulds MSJ 4-6; Goulds Reply 1-3; *see* Reply S.M.F. ¶¶ 12-15, 19-21.) There are three sets of documents at issue.

The first group is comprised of documents provided by Georgia-Pacific/Domtar in a separate, unrelated proceeding, *Kilton v. F.W. Webb*—a case to which Goulds was not a party. (*See* Pl.'s Exhs. 9-11.) These documents consist of Georgia Pacific purchase orders for three models of Goulds pumps, model numbers 3196, 3175, and 3881, which were sold in various quantities to Georgia Pacific between August 22, 1979, and October 11, 1984. (A.S.M.F. ¶¶ 13-15.) Scott Beal, Environmental and Safety Manager of Georgia-Pacific/Domtar, authenticated the documents at issue in a deposition conducted in the *Kilton* case. (A.S.M.F. ¶ 12; Reply S.M.F. ¶ 12; *see* Pl.'s Exh. 8.) Goulds objects to Plaintiff's reliance on these documents because they were not authenticated as business records by affidavit or deposition transcript by the record custodian in the *present* case. (Reply S.M.F. ¶¶ 13-15). Goulds also argues that the documents are inadmissible hearsay because they do not satisfy the former testimony exception in M.R. Evid. 804(b)(1) because Goulds was not a party to the *Kilton* case.[11] (Goulds Reply 2.) Goulds does not otherwise admit, deny, or qualify the statements of material fact that are based on the documents. (*See* Reply. S.M.F. ¶¶ 13-15.)

Goulds also challenges Plaintiff's use of a Goulds brochure or instructional manual. (*See* Pl.'s Exh. 13.) Goulds objects that the brochure has not been properly authenticated as a business record by any witness, affiant, or deponent and thus is inadmissible hearsay. (Reply S.M.F. ¶¶ 19-20.) The provenance of the brochure is not clear, but the Plaintiff cites to it as it

---

[11] M.R. Evid. 804(b)(1) excludes from the hearsay rule when the declarant is unavailable "[t]estimony given as a witness at another hearing of the same or a different proceeding . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

8

relates to Goulds pump model 3196, which Plaintiff asserts was purchased by Georgia Pacific and contained asbestos in its box packing, casing, gland packing, and jacket cover. (A.S.M.F. ¶¶ 13, 19-20.)

The final document to which Plaintiff objects is a Goulds bulletin that was among the documents authenticated by Scott Beals. (*See* Pl.'s Exh. 14; A.S.M.F. ¶ 12.) Goulds maintains that the bulletin was not authenticated as a business record by affidavit or deposition transcript by the record custodian in the present case. (Reply S.M.F. ¶ 21.) Goulds does not otherwise admit, deny, or qualify the statement of material fact that is based on the bulletin. (Reply. S.M.F. ¶ 21.) Plaintiff cites to the bulletin as it relates to Goulds pump model 3175, which Plaintiff asserts was purchased by Georgia Pacific and contained asbestos in its stuffing box packing, gland packing, suction casing gasket, sideplate casing gasket, stuffing box cover, and water jacket cover. (A.S.M.F. ¶¶ 13, 21.)

First, in the Court's view, the brochure qualifies as an admission by a party opponent and perhaps could even be authenticated as an ancient document. *See* M.R. Evid. 801(d)(2); M.R. Evid. 901(b)(8). The Court thus will consider the brochure.

As to the remaining documents, Goulds's authentication objection is technically accurate: Plaintiff has not shown that the documents authenticated in the *Kilton* case by Mr. Beal are in fact the documents presented to the court.[12] However, Goulds does not suggest that the documents are *inauthentic* or could not be re-authenticated by Mr. Beal or by the source of the documents, only that they have not yet been *authenticated* in this matter. Regardless, as discussed below, even if the Court disregards these documents, Plaintiff has established a prima facie case of product nexus.

---

[12] The deposition testimony of Scot Beal satisfies the elements of the business record exception otherwise, and Goulds has not argued that the testimony would not satisfy the same. *See* M.R. Evid. 803(6). (Pl.'s Exh. 8.)

9

## 2. Product Nexus

Goulds argues that Plaintiff cannot establish a connection between the Decedent and asbestos containing components from Goulds equipment. In other words, Goulds contends that Plaintiff cannot prove product nexus. Product nexus requires proof "that the defendant's asbestos-containing product was at the site where the plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used . . . ." *Boyden*, 2007 Me. Super. LEXIS 47 at *11 (quotation marks omitted).

To establish that the Goulds pumps at the Woodland mill contained asbestos, Plaintiff relies primarily on the testimony Brian Canane. Canane testifies that the Goulds pumps at the mill contained asbestos gaskets and packing. (A.S.M.F. ¶¶ 9, 11; Pl.'s Exh. 5 23:5-22.) Goulds argues that the testimony lacks foundation for Canane to make the observation of asbestos gaskets or packing, and further argues that Canane should not be permitted to testify because he has not been designated as an expert witness in this matter (Reply S.M.F. ¶¶ 9, 11). The relevant testimony is as follows:

> Q   Okay. What products do you believe that were in the mill that had asbestos in them, on them, that were any part of them?
> A   Oh, a lot of the older valves, because they used it for the valve packing. They also used gaskets for all of them. Valves, pumps, whatever needed a gasket.
> Q   Okay. And what valve and pump manufacturers do you recall?
> A   Well, I did a lot of automatic valves from Fisher. And I'm not sure who builds the gate valves, but there's hundreds of them there.
> Q   What about pumps?
> A   I believe it was Gould.
> Q   And how would you know they were Goulds pumps?
> A   Stamped on them.
> Q   Any particular color or anything?
> A   Blue.

(Pl.'s Exh. 5 23:5-22.) While the Court recognizes that the witness was asked for the products that he "believed" were in the mill, the Court is persuaded that Mr. Canane's testimony is based

10

on his personal observation of the pumps. In particular, Mr. Canane's description of "Goulds" stamped in blue on the pumps suggests that he has personal knowledge of the presence of Goulds pumps in the mill.

To establish that the pumps arrived at the Woodland mill with asbestos, Plaintiff cites the testimony of Barry Bradshaw, a Goulds corporate representative.[13] Goulds shipped pumps with asbestos packing and gaskets until 1984. (A.S.M.F. ¶ 18; Reply S.M.F. ¶ 18.) Through the testimony of Canane and Bradshaw, Plaintiff has presented evidence from which a fact finder could reasonably conclude that Goulds pumps containing asbestos were present at the Woodland mill.

Given the record presented by Goulds, Plaintiff must next show that the Decedent was exposed to asbestos from the pumps in order to establish the necessary product nexus. The summary judgment record contains evidence that the Decedent: passed by the machine room where other workers tore apart pumps (A.S.M.F. ¶ 7; Reply S.M.F. ¶ 7); cleaned up debris in areas containing pumps and valves after other mill employees had completed their work on pumps and valves (A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1); cleaned debris from other areas (Opp. S.M.F. ¶ 12); cleaned gaskets from an alleyway (A.S.M.F. ¶ 4; Reply S.M.F. ¶ 4); may have moved pumps and valves (A.S.M.F. ¶ 4); and shoveled asbestos debris piping material into a hopper in the bleach plant alleyway (Supp. S.M.F. ¶ 26; Opp. S.M.F. ¶ 26). The record also supports, through Canane's testimony, the Decedent cleaning up debris in areas where Goulds

---

[13] According to Mr. Bradshaw's testimony:

- Goulds sold 19 pumps to Georgia Pacific between 1979 and 1984, including thirteen Model 3196 pumps and five Model 3175 pumps. (A.S.M.F. ¶¶ 13-15.)
- Pump Model 3196 contained four asbestos containing components: box packing, casing, gland packing, and jacket cover. (A.S.M.F. ¶¶ 19-20.)
- Pump Model 3175 contained six asbestos containing components: stuffing box packing, gland packing, suction casing gasket, sideplate casing gasket, stuffing box cover, and water jacket cover. (A.S.M.F. ¶ 21.)
- Gould shipped pumps with asbestos packing and gaskets until 1984. (A.S.M.F. ¶ 18; Reply S.M.F. ¶ 18.)

11

pumps had just been torn apart and rebuilt and that Goulds pumps contained asbestos. (*See* Pl.'s Exh. 5 23:5-22, 81:16-84:16.) Plaintiff thus has presented evidence from which a fact finder could conclude that the Decedent was exposed to asbestos from a Goulds product. Accordingly, the case involves a material issue of fact on the issue.

III.    CONCLUSION

Based on the foregoing analysis, the Court denies Goulds Pumps, Inc.'s motion for summary judgment.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 7/26/12

John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 7·31·12
Copies sent via Mail ___ Electronically ✓

|  |  |  |
|---|---|---|
| MICHAEL MAHAR, Personal Representative of the ESTATE OF MYRTLE J. MAHAR, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | **DECISION AND ORDER** (Warren Pumps, LLC) |
| v. | ) ) | |
| SULLIVAN & MERRITT, INC., DEZURIK, INC., F.W. WEBB CO., GENERAL ELECTRIC CO., CBS CORP., THOMAS DICENZO, INC., GOULDS PUMPS, INC., WARREN PUMPS, LLC, JOS. A. BERTRAM, INC., PEARSE-BERTRAM, LLC, and BERTRAM CONTROLS CORP., LLC, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |

In this action, Plaintiff seeks to recover damages allegedly resulting from the death of Myrtle J. Mahar (the Decedent) due to her exposure to asbestos during the course of her employment at the Georgia-Pacific mill in Woodland, Maine, (now the Domtar mill, but hereinafter referred to as the "Woodland mill"). Plaintiff alleges that as a result of exposure to asbestos used with products manufactured or removed the Defendants, the Decedent contracted mesothelioma, which resulted in her death. The matter is before the Court on the summary judgment motion of Defendant Warren Pumps, LLC (Warren).

I.  FACTUAL BACKGROUND

The Decedent worked at the Woodland mill from 1977 until 2008. (Supp. S.M.F. ¶¶ 1-2; Opp. S.M.F. ¶¶ 1-2.) From 1977 until 1981, the Decedent worked as a "spare" and in the yard

crew; her duties included cleaning and painting motors, checking tanks, and cleaning spills. (Supp. S.M.F. ¶ 3; Opp. S.M.F. ¶ 3.)[1] As a spare, the Decedent worked where she was needed, including alleyways, the wood room, the craft mill, the bleach plant, and the steam plant. (A.S.M.F. ¶ 5; Reply S.M.F. ¶ 5.) The Decedent cleaned in places where mill workers tore apart and rebuilt pumps and valves, including those with asbestos packing. (A.S.M.F. ¶¶ 6-7; Reply S.M.F. ¶¶ 6-7.)

The Decedent became a permanent janitor in 1981. (Supp. S.M.F. ¶ 4; Opp. S.M.F. ¶ 4.) As a janitor at the mill, she scrubbed, swept, and waxed floors and washed walls; she also cleaned bathrooms and office spaces all over the mill. (Supp. S.M.F. ¶¶ 4-5; Opp. S.M.F. ¶¶ 4-5.) While working at the mill, the Decedent may have swept up scattered material containing asbestos, especially pipe covering that would fall off in chunks or that was hanging off boilers. (Supp. S.M.F. ¶ 7; Opp. S.M.F. ¶ 7.) The Decedent also may have been exposed to asbestos fibers in the air from loose pipe insulation and from loose discarded material she encountered while cleaning up the alleyways. (Supp. S.M.F. ¶ 8.)[2]

It is undisputed that Warren pumps were present at the mill.[3] (Supp. S.M.F. ¶¶ 21-22, 25, 27, 29-30; Opp. S.M.F. ¶¶ 21-22, 25, 27, 29-30; A.S.M.F. ¶¶ 1, 8[4]; Reply S.M.F. ¶¶ 1, 8.) Until at least 1986, some pumps produced by Warren contained asbestos, but there is no evidence that these asbestos containing pumps were present at the Woodland mill. (A.S.M.F. ¶ 3; Reply

---

[1] Plaintiff denies this statement of material fact, but the denial is really more of a qualification that the Decedent worked as a spare from 1977 (not 1979) until 1981, and that she was also worked in the yard crew during that period. (Opp. S.M.F. ¶ 3.)

[2] Plaintiff attempts to qualify this statement, but includes no record citation for the qualification. The statement is supported by record evidence and is thus deemed admitted. *See* M.R. Civ. P. 56(h).

[3] Warren asserts, and Plaintiff admits, that: "The Warren pumps were bare metal; there was no insulation on them." (Supp. S.M.F. ¶ 22; Opp. S.M.F. ¶ 22.) The statement would seem to indicate that all Warren pumps at the Woodland mill were bare, but the testimony cited indicates that the deponent remembered seeing Warren stamped on an uninsulated pump. The testimony does not support that all Warren pumps in use at the plant were bare.

[4] Plaintiff's additional statement of material facts contains two paragraphs numbered "7." The order proceeds by renumbering the second "7" as "8," and the "8" as "9" as in the reply statement of material facts.

2

S.M.F. ¶ 3.) The Decedent worked near or passed by mill workers that were working on pumps and valves. (Supp. S.M.F. ¶ 13; Opp. S.M.F. ¶ 13.) The Decedent herself did not work on pumps, other than occasionally painting them, and she did not repack a pump. (Supp. S.M.F. ¶¶ 15-16, 23; Opp. S.M.F. ¶¶ 15-16, 23.)

II.     PROCEDURAL BACKGROUND

Myrtle J. Mahar filed suit in Washington County Superior Court. The amended complaint asserts eight causes of action. The principal counts relevant to the present motion are: negligent failure to warn (Count I); strict liability failure to warn, *see* 14 M.R.S. § 221 (2011), (Count II); and punitive damages (Count IV), which were asserted against all named Defendants.

In Counts I and II, Plaintiff relies upon the Defendants' sale of asbestos containing equipment to the Woodland mill without adequate warning of the dangers of asbestos. In Count IV, Plaintiff seeks punitive damages for the Defendants' willful and malicious actions that were "in total disregard of the health and safety of the users and consumers of their products." (Compl. ¶ 40.) The Decedent passed away on October 1, 2009. (*See* Sugg. of Death, filed Mar. 29, 2010.) The present Plaintiff was substituted for the Decedent on July 11, 2011.

III.    DISCUSSION

A.     Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d

3

220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.    Applicable Substantive Law

Plaintiff's primary causes of action against Warren are negligence and strict liability. Plaintiff alleges that Warren manufactured asbestos containing products, that the Decedent was exposed to asbestos from those products in her work at the Woodland mill, and that the exposure to asbestos from Warren's products was a substantial factor in bringing about the Decedent's death from mesothelioma.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence

4

cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the RESTATEMENT (SECOND) OF TORTS.[5] In *Lohrmann*, the court announced and applied the frequency, regularity, and proximity test, which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail. *See id.* at 1163-64.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[6] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the

---

[5] The RESTATEMENT (SECOND) OF TORTS is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . ." RESTATEMENT (SECOND) OF TORTS § 431(a).

[6] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No. LINSC-CV-2004-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[7] In rejecting the *Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* (quoting 63 AM. JUR. 2D *Products Liability* § 70 (2001) (emphasis added)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained period of time while under the standard applied by Justice Gorman a plaintiff must only demonstrate that plaintiff was in proximity to the product at the time that it was being used, the *Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the applicable standard cannot, however, be controlled by the standard's degree of difficulty. Instead, the standard must be consistent with basic principles of causation. In this regard, the Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a question of fact. The Court perceives of no basis in law to deviate from this longstanding legal principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition

---

[7] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

6

to producing evidence of medical causation, a plaintiff must establish the product nexus through competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiffs must demonstrate that: (1) Warren's product was at the Woodland mill, (2) Warren's product at the Woodland mill contained asbestos, and (3) the Decedent had personal contact with asbestos from Warren's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at \*8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

C.    Analysis

Warren argues that Plaintiff cannot establish a connection between the Decedent and Warren pumps. In other words, Warren maintains that Plaintiff has failed to prove product nexus. Although Plaintiff has established that Warren pumps were present at the Woodland mill when the Decedent was employed at the mill, the summary judgment record contains no evidence that the Decedent was in proximity to Warren pumps or that the Warren pumps either contained or were wrapped in asbestos. (A.S.M.F. ¶ 3; Reply S.M.F. ¶ 3.) That is, contrary to

7

Plaintiff's argument, there is not direct or circumstantial evidence from which a fact finder could reasonably conclude that the Decedent was exposed to a Warren product that contained asbestos.

Plaintiff thus has not made out a prime facie case to establish negligence or strict liability. *See Reliance Nat'l Indem.*, 2005 ME 29, ¶ 9, 868 A.2d 220. Accordingly, Warren is entitled to summary judgment.

III.   CONCLUSION

Based on the foregoing analysis, the Court grants Warren Pumps, LLC's motion for summary judgment and enters judgment in favor of Warren Pumps, LLC on all counts of Plaintiff's complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 7/26/12

_____
John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 7·31·12
Copies sent via Mail ___ Electronically ✓

8

STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss                          Location: Portland
                                        Docket No.: BCD-CV-10-21


                                    )
MICHAEL MAHAR, Personal             )
Representative of the ESTATE OF     )
MYRTLE J. MAHAR,                    )
                                    )
            Plaintiff,              )
                                    )        **DECISION AND ORDER**
      v.                            )           (DeZurik, Inc.)
                                    )
SULLIVAN & MERRITT, INC.,           )
DEZURIK, INC., F.W. WEBB CO.,       )
GENERAL ELECTRIC CO., CBS CORP.,    )
THOMAS DICENZO, INC., GOULDS        )
PUMPS, INC., WARREN PUMPS, LLC,     )
JOS. A. BERTRAM, INC.,              )
PEARSE-BERTRAM, LLC, and            )
BERTRAM CONTROLS CORP., LLC,        )
                                    )
            Defendants              )
                                    )


In this action, Plaintiff seeks to recover damages allegedly resulting from the death of

Myrtle J. Mahar (the Decedent) due to her exposure to asbestos during the course of her

employment at the Georgia-Pacific mill in Woodland, Maine, (now the Domtar mill, but

hereinafter referred to as the "Woodland mill"). Plaintiff alleges that as a result of exposure to

asbestos used with products manufactured or removed by the Defendants, the Decedent

contracted mesothelioma, which resulted in her death. The matter is before the Court on the

summary judgment motion of Defendant DeZurik, Inc.

I.     FACTUAL BACKGROUND

      The Decedent worked at the Woodland mill from 1977 until 2008. (Supp. S.M.F. ¶¶ 1-2;

Opp. S.M.F. ¶¶ 1-2.) From 1977 until 1981, the Decedent worked as a "spare" and in the yard

crew; her duties included cleaning and painting motors, checking tanks, and cleaning spills. (Supp. S.M.F. ¶ 3; Opp. S.M.F. ¶ 3.)[1] As a spare, the Decedent worked where she was needed, including alleyways, the wood room, the craft mill, the bleach plant, and the steam plant. (A.S.M.F. ¶ 8; Reply S.M.F. ¶ 8.) The Decedent cleaned in places where mill workers tore apart and rebuilt pumps and valves, including those with asbestos packing. (A.S.M.F. ¶¶ 9-10; Reply S.M.F. ¶¶ 9-10.)

The Decedent became a permanent janitor in 1981. (Supp. S.M.F. ¶ 4; Opp. S.M.F. ¶ 3.) As a janitor at the mill, she scrubbed, swept, and waxed floors and washed walls; she also cleaned bathrooms and office spaces all over the mill. (Supp. S.M.F. ¶¶ 4-5; Opp. S.M.F. ¶¶ 4-5.) While working at the mill, the Decedent may have swept up scattered material containing asbestos, especially pipe covering that would fall off in chunks or that was hanging off boilers. (Supp. S.M.F. ¶ 7; Opp. S.M.F. ¶ 7.) The Decedent also may have been exposed to asbestos fibers in the air from loose pipe insulation and from loose discarded material she encountered while cleaning up the alleyways. (Supp. S.M.F. ¶ 8.)[2]

Between May 16, 1969, and November 2, 1984, the Woodland mill purchased at least 175 valves from DeZurik. (A.S.M.F. ¶ 1; Reply S.M.F. ¶ 1.) Between the early 1970s until the early 1990s, DeZurik manufactured and sold certain valves that utilized asbestos-containing gaskets or asbestos packing. (A.S.M.F. ¶¶ 3-7)[3] Neither the Decedent nor any of the other deponents in this case recalled seeing any DeZurik valves in the Woodland plant. (Supp. S.M.F. ¶ 18; Opp. S.M.F. ¶ 18.)

---

[1] Plaintiff denies this statement of material fact, but the denial is really more of a qualification that the Decedent worked as a spare from 1977 (not 1979) until 1981, and that she was also worked in the yard crew during this period. (Opp. S.M.F. ¶ 3.)

[2] Plaintiff attempts to qualify this statement, but includes no record citation for the qualification. The statement is supported by record evidence and is thus deemed admitted. *See* M.R. Civ. P. 56(h).

[3] DeZurik qualifies these statements, admitting that the valves were manufactured or sold, but denying that all such valves contained asbestos or that the valves sold to the Woodland mill contained any asbestos. (Reply S.M.F. ¶¶ 3-7.)

2

II.    PROCEDURAL BACKGROUND

Myrtle J. Mahar filed suit in Washington County Superior Court. The amended complaint asserts eight causes of action. The principal counts relevant to the present motion are: negligent failure to warn (Count I); strict liability failure to warn, *see* 14 M.R.S. § 221 (2011), (Count II); and punitive damages (Count IV), which were asserted against all named Defendants.

In Counts I and II, Plaintiff relies on Defendants' sale of asbestos containing equipment to the Woodland mill without adequate warning of the dangers of asbestos. In Count IV, Plaintiff seeks punitive damages for the Defendants' willful and malicious actions that were "in total disregard of the health and safety of the users and consumers of their products." (Compl. ¶ 40.) The Decedent passed away on October 1, 2009. (*See* Sugg. of Death, filed Mar. 29, 2010.) The present Plaintiff was substituted for the Decedent on July 11, 2011.

III.    DISCUSSION

A.    Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." A party wishing to avoid summary judgment must present a prima facie case for each element of a claim or defense that is asserted. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

3

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

B.      Applicable Substantive Law

Plaintiff's primary causes of action against DeZurik are negligence and strict liability. Plaintiff alleges that DeZurik manufactured asbestos containing products, that the Decedent was exposed to asbestos from those products in her work at the Woodland mill, and that the exposure to asbestos from DeZurik's products was a substantial factor in bringing about the Decedent's death from mesothelioma.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers.

4

*See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993).

As the asbestos litigation has evolved both nationally and within Maine, the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product has been subject of much debate. A majority of jurisdictions have adopted the standard articulated by the court in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), where the court construed the "substantial factor" test of the RESTATEMENT (SECOND) OF TORTS.[4] In *Lohrmann*, the court announced and applied the frequency, regularity, and proximity test, which requires a plaintiff to "prove more than a casual or minimum contact with the product" that contains asbestos. 782 F.2d at 1162. Rather, under *Lohrmann*, a plaintiff must present "evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked." *Id.* at 1162-63. *Lohrmann* suggests that the Court engage a quantitative analysis of a party's exposure to asbestos in order to determine whether, as a matter of law, the party can prevail. *See id.* at 1163-64.

Although the Maine Law Court has not addressed the issue, at least one Justice of the Maine Superior Court has expressly rejected the *Lohrmann* standard. Justice Ellen Gorman[5] rejected the *Lohrmann* standard "because it is entirely the jury's function to determine if the conduct of the defendant was a substantial factor in causing the plaintiff's injury and because it is not appropriate for the court to determine whether a plaintiff has proven that a defendant's product proximately caused the harm." *Campbell v. The H.B. Smith Co., Inc.*, Docket No.

---

[4] The RESTATEMENT (SECOND) OF TORTS is consistent with the causation standard in Maine. Section 431 provides in pertinent part that "[t]he actor's negligent conduct is a legal cause of harm to another if . . . his conduct is a substantial factor in bringing about the harm . . ." RESTATEMENT (SECOND) OF TORTS § 431(a).

[5] At the time, Justice Gorman was a member of the Maine Superior Court. Justice Gorman was subsequently appointed to the Maine Supreme Judicial Court.

LINSC-CV-2004-57, at 7 (Me. Super. Ct., Lin. Cty., Apr. 2, 2007) (Gorman, J.).[6] In rejecting the

*Lohrmann* standard, Justice Gorman wrote that to establish a *prima facie* case, a plaintiff must

demonstrate:

> (1) medical causation – that the plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury and (2) product nexus – that the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* ... a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.* (quoting 63 AM. JUR. 2D *Products Liability* § 70 (2001) (emphasis added)).

Insofar as under *Lohrmann* a plaintiff must prove exposure to asbestos over a sustained

period of time while under the standard applied by Justice Gorman a plaintiff must only

demonstrate that plaintiff was in proximity to the product at the time that it was being used, the

*Lohrmann* standard imposes a higher threshold for claimants. The Court's decision as to the

applicable standard cannot, however, be controlled by the standard's degree of difficulty.

Instead, the standard must be consistent with basic principles of causation. In this regard, the

Court agrees with the essence of Justice Gorman's conclusion – to require a quantitative

assessment of a plaintiff's exposure to asbestos, as contemplated by *Lohrmann*, would usurp the

fact finder's province. Whether a defendant's conduct caused a particular injury is at its core a

question of fact. The Court perceives of no basis in law to deviate from this longstanding legal

principle. The Court, therefore, concludes that in order to avoid summary judgment, in addition

to producing evidence of medical causation, a plaintiff must establish the product nexus through

competent evidence. In particular, a plaintiff must demonstrate (1) that the defendant's product

was at the defendant's work place, (2) that the defendant's product contained asbestos, (3) and

---

[6] Justice Gorman also rejected the *Lohrmann* standard for similar reasons in *Boyden v. Tri-State Packing Supply, et al.*, Docket No. CV-04-452 (Me. Super. Ct., Feb. 28, 2007).

that the plaintiff had personal contact with the asbestos from the defendant's product. If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a "substantial factor" in causing the plaintiff's damages is for the jury.

Thus, to survive the motion for summary judgment, the Plaintiffs must demonstrate that: (1) DeZurik's product was at the Woodland mill, (2) DeZurik's product at the Woodland mill contained asbestos, and (3) the Decedent had personal contact with asbestos from DeZurik's product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's product was a 'substantial factor' in causing the plaintiff's damages is for the jury." *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 ("Proximate cause is generally a question of fact for the jury.").

C.    Analysis

DeZurik argues that Plaintiff cannot establish a connection between the Decedent and DeZurik valves. In other words, DeZurik contends that Plaintiff has failed to prove product nexus. Plaintiff has established that the Woodland mill purchased DeZurik valves. A reasonable inference to the Plaintiff as the non-moving party is that DeZurik valves were present at the Woodland mill. *See Lightfoot*, 2003 ME 24, ¶ 6, 816 A.2d 63. Plaintiff asserts that based on the volume of DeZurik valves purchased by Woodland mill, and given that the Decedent passed through areas of the mill while other employees repaired valves, a fact finder could reasonably infer that the Decedent "was exposed to asbestos through the repair and maintenance of DeZurik valves."

7

Contrary to Plaintiff's argument, the record does not contain evidence from which a reasonable fact finder could conclude that the Decedent was exposed to an asbestos-containing product manufactured by DeZurik. More specifically, the record contains no direct evidence that the Decedent had contact with a DeZurik product. In addition, Plaintiff has not demonstrated that the volume of DeZurik products was such that a reasonable fact finder could conclude that Decedent had contact with a DeZurik product. Plaintiff thus has not made out a prime facie case to establish negligence or strict liability. *See Reliance Nat'l Indem.*, 2005 ME 29, ¶ 9, 868 A.2d 220. Accordingly, DeZurik is entitled to summary judgment.

IV.  CONCLUSION

Based on the foregoing analysis, the Court grants DeZurik, Inc.'s motion for summary judgment and enters judgment in favor of DeZurik, Inc. on all counts of Plaintiff's complaint.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 7/26/12

John C. Nivison
Justice, Maine Business & Consumer Court

Entered on the Docket: 7-31-12
Copies sent via Mail ___ Electronically ✓

8

BCD CV-10-21

Michael Mahar, as Personal
Representative of the Estate of
Myrtle J. Mahar
                    Plaintiff

v.

Sullivan & Merritt, Inc., et al


Attorneys:

For plaintiff:  Paul Boots , Esq. (local counsel)
                Paul Boots, PA
                Joseph Cirilano, Esq.  (out-of state counsel)
                Goldberg, Persky & White

CBS Corp:       Elizabeth Stouder, Esq.
                Richardson, Whitman, Large & Badger

DeZurk Inc. & Warren Pumps:
                Steven Wright, Esq.
                Wright & Associates

Thomas Dicenzo Inc.
                David C. King, Esq.
                Rudman & Winchell

Goulds Pumps: Jeffrey Edwards, Esq.
                Preti Flaherty

General Electric
                Alex Toribio, Esq.
                McCarter & English

STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-10-21
$\mathcal{U}$C $\mathcal{N}$-C $\mathcal{U}$.$\mathcal{H}$- 7/13/2013

)
MICHAEL MAHAR, Personal                )
Representative of the ESTATE OF        )
MYRTLE J. MAHAR,                       )
                                       )
            Plaintiff, ·               )
                                       )            **DECISION AND ORDER**
v.                                     )            (Motion for Summary Judgment)
                                       )
SULLIVAN & MERRITT, INC., et al.,      )
                                       )
            Defendants                 )
                                       )

This matter is before the Court on the Motion for Summary Judgment of Defendant

Sullivan & Merritt, Inc. (S&M), by which motion S&M seeks summary judgment on all counts

asserted against it by Plaintiff Michael Mahar, Personal Representative of the Estate of Myrtle J.

Mahar. In this action, Plaintiff seeks to recover damages resulting from Myrtle Mahar's

exposure to asbestos while working at the Georgia Pacific Paper Mill in Woodland, Maine.

More specifically, Plaintiff contends that S&M is liable due to its alleged negligence (Count I)

and under a theory of strict liability, *see* 14 M.R.S. § 221 (2012), (Count II). Plaintiff also

requests punitive damages (Count IV).[1]

In its motion, S&M argues: 1) that it owed no duty to Myrtle Mahar (the Decedent) as a

general contractor neither employed by the Mill nor handling asbestos; and 2) that it cannot be

liable for harm to the Decedent between 1988 and 2006 because it is a successor to the original

Sullivan & Merritt, Inc., purchasing only the assets of the original entity in 1988. In response,

Plaintiff asserts that S&M did in fact handle asbestos in its work at the Mill, that the Decedent

---

[1] At the hearing on the motion for summary judgment, the parties agreed that judgment could be entered on the strict liability claim. The remaining issue for the Court's consideration is S&M's negligence claim.

was exposed to asbestos handled by S&M, and that S&M is a continuation of the original Sullivan & Merritt, Inc. and thus liable for its predecessor's torts.

## FACTUAL BACKGROUND

The Decedent worked in the Mill in Woodland, Maine, from April 29, 1977, until June 25, 2008. (S.S.M.F. ¶¶ 1-2, 53; O.S.M.F. ¶¶ 1-2; 53.) S&M, a general contracting company, was started in 1977 by Peter Sullivan and John Merritt. (S.S.M.F. ¶¶ 92-93; O.S.M.F. ¶¶ 92-93.) In January of 1988, John Lee and Douglas Herman purchased the company name and assets of S&M, and agreed to provide labor for S&M's existing jobs/obligations. (S.S.M.F. ¶ 94; O.S.M.F. ¶ 94.) The agreement by which Lee and Herman acquired the name and assets provides: "Buyer shall complete Seller's work-in-progress, including, but not limited to, work arising from outstanding bids, described in Exhibit G attached hereto." (Pl.'s Exh. 16 at 3, § 9(a).) Exhibit G lists ongoing work by internal bill number; it does not contain any information identifying the location of the work. (Pl.'s Exh. 16, Exh. G.) The statements of material fact do not identify any work-in-progress completed by S&M at the Mill. Lee and Herman did not expressly purchase the liabilities of S&M (S.S.M.F. ¶ 96).[2] Lee and Herman sold S&M in August 2006. (S.S.M.F. ¶ 97; O.S.M.F. ¶ 97.)

## DISCUSSION

### I.    Standard of Review

Pursuant to M.R. Civ. P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact set forth in those statements and that [the] party is entitled to a judgment as a matter of law." *See also Beal v.*

_____

[2] Plaintiff qualifies this statement to note that whether certain liabilities were assumed is question of law (O.S.M.F. ¶ 96).

2

*Allstate Ins. Co.*, 2010 ME 20, ¶ 11, 989 A.2d 733. A party wishing to avoid summary judgment must present a prima facie case for each element of the claim or defense that is asserted against it. *See Reliance Nat'l Indem. v. Knowles Indus. Svcs.*, 2005 ME 29, ¶ 9, 868 A.2d 220. At this stage, the facts in the summary judgment record are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶ 6, 816 A.2d 63. "If material facts are disputed, the dispute must be resolved through fact-finding." *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 18, 917 A.2d 123 (quotation marks omitted).

A factual issue is genuine when there is sufficient supporting evidence for the claimed fact that would require a fact-finder to choose between competing versions of the facts at trial. *See Inkel v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745. "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." *Kenny v. Dep't of Human Svcs.*, 1999 ME 158, ¶ 3, 740 A.2d 560 (quoting *Vinick v. Comm'r*, 110 F.3d 168, 171 (1st Cir. 1997)).

II. <u>Analysis</u>

A. *Successor Liability*

S&M argues that it has no liability for any of the Decedent's exposure to asbestos before 1988 and after 2006 because it did not purchase the liabilities of its predecessor, and thus has no successor liability. The Law Court has held that "absent a contrary agreement by the parties, or an explicit statutory provision in derogation of the established common law rule, a corporation that purchases the assets of another corporation in a bona fide, arm's-length transaction is not liable for the debts or liabilities of the transferor corporation." *Dir. of Bureau of Labor Standards v. Diamond Brands, Inc.*, 588 A.2d 734, 736 (Me. 1991); *accord Jordan v. Hawker*

3

*Dayton Co.*, 62 F.3d 29, 31-32 (1st Cir. 1995) (applying Maine law). *Diamond Brands* was a contract case, but the same principle applies to tort liability.

> The general rule of nonliability in the case of a mere acquisition of the assets of one corporation by another, subject to the exceptions set forth in this chapter, applies equally well to the liability of the transferee company for the torts of the transferor company. Thus, generally, when a corporation acquires the assets of another company but does not acquire the stock of that company, it is not obligated for the liabilities of the corporation from which the assets are acquired.

15 Fletcher Cyclopedia of the Law of Corporations § 7123 (WestLaw, updated through Sept. 2012). One of these exceptions is the mere continuation of business exception, which Plaintiff asserts should apply here.

"The mere continuation of business exception to the nonliability of successors applies when the transferee corporation is merely a continuation or reincarnation of the transferor corporation." 15 Fletcher Cyclopedia of the Law of Corporations § 7124.10.

> The mere continuation theory of successor liability envisions a reorganization transforming a single company from one corporate entity into another. [T]he indices of a 'continuation' are, *at a minimum*: continuity of directors, officers, and stockholders; and the continued existence of only one corporation after the sale of assets. In essence, the purchasing corporation is merely a 'new hat' for the seller.

*Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 255 (Mass. 008) (emphasis added) (quotation marks and citations omitted).

Plaintiff, relying on *Milliken*, argues that successor S&M is the same in substance as its predecessor, with the same name, carrying out work in progress, and relying on the familiarity and name recognition of its predecessor and representing to the world it was a continuation of an existing business. (Opp'n MSJ 5.) Plaintiff asserts that under these circumstances it is equitable for S&M to assume liability for how the work was performed, including tort liability from negligent performance. (Opp'n MSJ 6.)

4

*Milliken*, however, involved the sale of the assets of a corporation and circumstances that *did* involve a "continuity of directors, officers, and stockholders," and facts that are wholly dissimilar from the facts here. Presuming the exception would be applied in Maine, Plaintiffs have failed to establish a factual record to support their theory. To the contrary, the summary judgment record establishes that the exception is inapplicable. Lee was an employee of S&M's predecessor (*see* S.S.M.F. ¶ 98; O.S.M.F. ¶ 98)—the record is silent as to Herman's association with S&M—but there is no evidence that either Lee or Herman were shareholders or stockholders of the predecessor S&M, or involved in management of the predecessor entity. Further, the purchase and sale agreement indicates an arm's length transaction and Plaintiff has not alleged otherwise. *See Diamond Brands, Inc.*, 588 A.2d at 736 (stating the purchase of assets only in a bona fide arms length transaction does not impose liability on the purchaser).

Having failed to present sufficient facts wherein any exception to the general rule should apply to the circumstances to this case, Plaintiff cannot recover from S&M for the Decedent's exposure to asbestos before the purchase of S&M in 1988 and after the 2006 sale.

B. *Substantive Tort Claims*

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another, is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user); RESTATEMENT (SECOND) OF TORTS § 388 (1965). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)],

5

imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993).

S&M's motion asserts that because S&M did not supply or produce any asbestos, the case is outside the parameters of a typical defective products case based on a duty to warn. S&M characterizes the relevant inquiry as "whether a general contractor has a duty to warn a non-employee that her work environment, over which the general contactor has no responsibility or control, may contain asbestos." (MSJ 6.) S&M answers this question in the negative, citing *Bryan R. v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 1999 ME 144, ¶ 12, 738 A.2d 839:

> There does not exist a general obligation to protect others from harm not created by the actor. "The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." Restatement (Second) of Torts § 314 (1965).

S&M asserts there is no duty in this case because S&M did not handle or disturb any asbestos material.[3]

Plaintiff asserts that S&M did in fact handle asbestos at the Mill, and that the Decedent was exposed to asbestos handled by S&M at the Mill. (MSJ 3-4; R.S.M.F. ¶¶ 27-32.) Thus, Plaintiff contends that S&M engaged in activity that put mill workers at risk of exposure to asbestos, and thereby owed a duty to either warn or protect those workers from the asbestos.

In support of this argument, Plaintiff relies upon the testimony of Brian Canane, a former employee of S&M. Mr. Canane maintains that S&M removed asbestos insulation in an unsafe manner so that the work on a project would continue, and so that S&M would be rehired by the Mill. (*See* A.S.M.F. ¶¶ 13-14.). When asked about the instruction or guidance that he received

---

[3] S&M also argues that this case does not involve a "special relationship," such that such a duty might be imposed. *See Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 18, 970 A.2d 310.

6

about the dangers of airborne asbestos during his apprenticeship as a pipefitter, Mr. Canane said, "[t]here was talk. Again, they did not sit us down and say this is what you don't do. We never had that. I guess it was assumed that everybody would use common sense when they got into those kind of conditions." (Pl.'s Exh. G 64:1-5.). Mr. Canane further testified:

Q Okay. Was it common sense that if there was asbestos that needed removal, that you would make sure no one was exposed to it?

A Yes, it was common sense, yes. Did it happen? No.

Q Why was that common sense procedure of making sure no one else was exposed to the asbestos [not] followed?

A How do I explain this without making it sound wrong?
You do what the companies want, you keep your job. You don't do what they want, you're laid off.

Q And by companies, are you talking about Commercial Union – or Commercial Welding, Sullivan & Merritt, Willette Brothers?

A I can honestly say every contractor I've worked for in Maine.

(Pl.'s Exh. G 65:16-66:4.). Mr. Canane further testified that while working for S&M in 1989 or 1990, he stripped asbestos off piping and threw it on the floor, and the Decedent picked up the asbestos pipecovering that was torn off pipes in 1989 or 1990. (*See* A.S.M.F. ¶ 15.)

On the current record, which includes the testimony of Mr. Canane, a fact finder could reasonably conclude that S&M had notice that its removal of asbestos containing material generated a risk of potential harm to those working in the mill, but failed to take reasonable measures, which include a failure to warn, to reduce the risk of harm to those working in the vicinity of S&M employees who were handling asbestos containing material.

A remaining issue is whether Plaintiff has previously asserted such a theory of liability. In Plaintiff's Amended Complaint, Plaintiff asserts:

7

33.   ... The condition of the Plaintiff was a direct and proximate result of the *negligence* of the Defendants, both jointly and severally, in that they produced, supplied, and/or sold, and/or used, and/or specified, *and/or removed products containing asbestos and other dangerous ingredients* which products Defendants knew, or in the exercise of reasonable care, should have known, were inherently and excessively dangerous to the Plaintiff without properly warning or safeguarding Plaintiff.

(Amend. Compl. ¶33 (emphasis added).)   While the theory might not have been the primary focus of the Amended Complaint, the theory upon which Plaintiff relies in opposition to S&M's motion for summary judgment, which theory is supported by the testimony of Mr. Canane, is included within the Amended Complaint.   The Court concludes, therefore, that Plaintiff can proceed on this theory of negligence.   Accordingly, summary judgment is not appropriate.

## CONCLUSION

Based on the foregoing analysis, the Court grants S&M's Motion for Summary Judgment on Plaintiff's strict liability claim.   The Court also grants S&M's Motion for Summary Judgment on the issue of successor liability.   The Court denies S&M's Motion for Summary Judgment on Plaintiff's negligence claim.

Pursuant to M.R. Civ. P. 79(a), the Clerk shall incorporate this Decision and Order into the docket by reference.

Date: 7/18/13

John C. Nivison
Justice, Maine Business & Consumer Court

8

**BCD-CV-10-21**

**Michael Mahar, Personal
Representative of the Estate of
Myrtle J. Mahar,**

**V.**

**Sullivan & Merritt, Inc., et al**


**Michael Mahar**
Local Counsel:
Paul Boots, Esq.
Paul M. Boots PA
22 Free Street, Suite 401
Portland ME  04112

Out of State Counsel
Joseph Cirilano, Esq.
Goldberg, Persky & White, P.C.
1030 5th Avenue
Pittsburgh, PA 15219

---

**Sullivan & Merritt, Inc.**
Michael E. Saucier, Esq.
Thompson Bowie, LLP.
Three Canal Plaza
Portland ME  04112-4630